UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

D.B.,

        Plaintiff,

     Case No. 2:25-cv-419

v.

     Judge Michael H. Watson

President Donald J.
Trump, *et al.*,

     Magistrate Judge Vascura

        Defendants.

## OPINION AND ORDER

Plaintiff D.B. is an F-1 nonimmigrant who recently graduated from a school in Texas and is now undertaking Optional Practical Training ("OPT") under 8 C.F.R. § 214.2(F)(10)(ii). Sometime in late March or early April 2025, the federal Government terminated his F-1 status. Now, D.B. moves for a Temporary Restraining Order ("TRO"), seeking the reinstatement of his F-1 status and an injunction preventing his detention or deportation. ECF No. 2. He claims that terminating his F-1 status violated the Administrative Procedure Act ("APA") and the Fifth Amendment. Joining the many other courts that have entered TROs in similar cases over the past two weeks,[1] the Court **GRANTS** D.B.'s motion.[2]

---

[1] *See, e.g., Oruganti v. Noem*, No. 2:25-CV-409, 2025 WL 1144560 (S.D. Ohio Apr. 18, 2025); *Doe v. Bondi*, No. 1:25-cv-1998 (N.D. Ga Apr. 18, 2025) (slip op.); *Student Doe v. Noem*, No. 2:25-CV-01103, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *Hinge v. Lyons*, No. CV 25-1097, 2025 WL 1134966 (D.D.C. Apr. 15, 2025); *Roe v. Noem*, No. CV 25-40, 2025 WL 1114694 (D. Mont. Apr. 15, 2025); *Ratsantiboon v. Noem*, No. 25-CV-01315, 2025 WL 1118645 (D. Minn. Apr. 15, 2025); *Isserdasani v. Noem,* No. 25-cv-283 (W.D. Wis. Apr. 15, 2025) (slip op.); *Liu v. Noem*, No. 1:25-cv-00133 (D.N.H. April 10, 2025) (slip op.).

[2] Under S.D. Ohio Civ. R. 65.1, the Court held a conference on D.B.'s motion on April 22, 2025. The Court orally issued a TRO, memorialized in this Opinion and Order.

## I. TRO FACTORS

A TRO is an extraordinary, emergency measure. *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006). A court should issue a TRO only if the movant carries its burden of proving that the circumstances "clearly" demand it. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also NetChoice, LLC v. Yost*, 711 F. Supp. 3d 844, 852 (S.D. Ohio 2024); Fed. R. Civ. P. 65(b)(1)(A).

Courts evaluate whether the circumstances "clearly" demand a TRO according to the traditional preliminary injunction ("PI") factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal citations and quotations omitted).

The PI and TRO standards are not identical, however. Relative to the PI standard, the TRO standard affords greater weight to "irreparable injury." *See NetChoice*, 711 F. Supp. 3d at 852 (describing immediate, irreparable harm as "paramount" to the TRO inquiry); *Doe v. Univ. of Cincinnati*, No. 1:15-cv-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) ("The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm[.]" (internal citations and quotations omitted)); *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977).

## II. APPLICATION

### A. D.B. will likely succeed on the merits of (at least) his APA claims.

Under the APA, reviewing courts shall set aside an agency action that is "not in accordance with the law." 5 U.S.C. § 706(2)(A).

Terminating F-1 status is "agency action." *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019). The Government's authority to take that action is narrowly circumscribed in that a nonimmigrant's F-1 status may be terminated only (i) by revoking a waiver that the Attorney General had previously authorized under § 212(d)(3) or (4) of the Immigration and Nationality Act; (ii) "'by the introduction of a private bill to confer permanent resident status'"; or (iii) "'pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.'" *Id.* (quoting 8 C.F.R. § 214.2(d)).

A dismissed gambling-paraphernalia charge fits none of those circumstances. *See, e.g.*, *Hinge*, 2025 WL 1134966, at *4 (finding likelihood of success where the Government terminated the plaintiff's F-1 status because of a dismissed charge); *Oruganti*, 2025 WL 1144560, at *1, *7 (finding likelihood of success where the Government terminated the plaintiff's F-1 status because she accidentally drove her car into a decorative brick wall); *Ratsantiboon*, 2025 WL 1118645, at *1–2 (finding likelihood of success where the Government terminated plaintiff's F-1 status based on convictions for careless driving and driving while impaired). Nor can the Court imagine any other valid justification for

terminating D.B.'s visa (at least not one based on the facts before it). Terminating D.B.'s F-1 status is thus likely "not in accordance with the law," and the Court should set the termination aside. 5 U.S.C. § 706(2)(A).

The Government raised one unpersuasive argument going to the merits at the Rule 65.1 hearing. The Government suggested that sovereign immunity bars D.B.'s claim. But the APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action," as D.B. likely has. 5 U.S.C. § 702. Although that waiver is subject to three limitations, none seem to bar D.B.'s claim here.[3] The Court thus finds that the APA likely waives sovereign immunity here.

In sum, D.B. is likely to succeed on the merits of its APA challenge,[4] strongly favoring a TRO.

### B. The termination of D.B.'s F-1 status may result in his deportation—a plainly irreparable injury—among other severe consequences.

Courts have cataloged the many imminent, irreparable injuries that may befall nonimmigrants who have their F-1 status revoked. *Hinge*, 2025 WL

---

[3] The requirements for sovereign-immunity waiver are: (1) the plaintiff must seek relief other than money damages; (2) the plaintiff must have no other adequate remedy; and (3) the plaintiff's action must not be expressly or impliedly forbidden by any other statute. *See United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (citing 5 U.S.C. §§ 702, 704); *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011).

[4] Because the Court finds likelihood of success on D.B.'s APA challenge, it need not address the merits of D.B.'s Fifth Amendment claim. *See Oruganti*, 2025 WL 1144560, at *6 n.5 (collecting cases). Although not yet made here, other courts have considered and rejected the Government's argument that the Privacy Act forbids actions like D.B.'s here. *See, e.g., Doe v. Bondi*, No. 1:25-cv-1998, slip op. at 10–11; *Student Doe*, 2025 WL 1134977, at *4–5.

1134966, at *6 (loss of OPT constitutes irreparable harm); *Doe v. Bondi*, No. 1:25-cv-1998-VMC, slip op. at 11–12 (loss of OPT results in lost "career opportunities"); *cf. Roe v. Noem*, 2025 WL 1114694, at *3–4 ("Losing F-1 status places Plaintiffs' education, research, financial stability, and career trajectories at imminent risk of irreparable harm"). Without F-1 status, D.B. stands to suffer from these same injuries.

Even more distressing, the termination of D.B.'s F-1 status renders him deportable. *See* 8 U.S.C. § 1227(a)(1)(C)(i) ("Any alien who was admitted as a [F-1] nonimmigrant and who has failed to maintain the [F-1] nonimmigrant status in which the alien was admitted . . . or to comply with the conditions of any such status, is deportable."). Deportation characteristically causes irreparable injury. *Slyusar v. Holder*, 740 F.3d 1068, 1074 (6th Cir. 2014) ("removal would be an irreparable injury"); *see also Oruganti*, 2025 WL 1144560, at *4; *Bridges v. Wixon*, 326 U.S. 135, 147 (1945) ("[D]eportation may result in the loss 'of all that makes life worth living'"). The mere fear of immigration detention and deportation may alone constitute a sufficient irreparable injury. *See Ratsantiboon*, 2025 WL 1118645, at *2 (observing that, absent a TRO, the plaintiff will "live in uncertain legal status while he pursues this matter . . . , which can constitute a separate irreparable harm" (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012))). But here D.B. has more than mere fear; the Government has deported others in D.B.'s situation. *See Ozturk v. Trump*, No. 25-CV-10695, 2025 WL 1009445, at *1–4 (D. Mass. Apr. 4, 2025).

All in all, the Court finds that D.B. faces an imminent, irreparable injury absent a TRO. This finding also strongly favors a TRO.

### C. The public interest in a Government that complies with the law outweighs the public interest in ending D.B.'s F-1 status now.[5]

On D.B.'s side of the scale, stacked on top of the imminent irreparable harm that D.B. faces without an injunction, the Court finds a substantial public interest in ensuring that governmental agencies abide by federal laws. *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022).

On Defendants' side of the scale, there is literally nothing. The public has no interest in permitting federal officials to act outside the law. *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025). So the argument that a TRO would impede the Government's sovereign prerogative (made and rejected elsewhere) falls flat here, too. And based on the evidence before it, the Court finds that D.B. presents no threat to public safety.

On balance then, the public interest also strongly favors a TRO. Having now considered all the TRO factors, the Court holds that a TRO is warranted.

### D. The Government's procedural misgivings are mistaken.

At the Rule 65.1 conference, the Government made two arguments about why it would be procedurally improper for the Court to enter a TRO here.

---

[5] The final two TRO factors (balance of hardships and public interest) merge when the Government is a party, as it is here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

First, the Government complained that it has not yet been able to fully respond, given the short timeline and D.B.'s prior unwillingness to disclose his identity. For this reason, the Government believes a TRO would be unusual. To the contrary, TROs exist to deal with emergent situations on short timelines just like this. Indeed, courts may issue TROs even "without written or oral notice to the adverse party," provided the moving party swears to their allegations under oath (as D.B. did at the Rule 65.1 hearing). *See* Fed. R. Civ. P. 65(b)(1). The Court does not mean to suggest that this TRO is ex parte. It is not, of course, because the Government has received notice and made arguments at the Rule 65.1 conference. The Court mentions ex-parte TROs only to make the point that the Government's inability to respond as thoroughly as it would like does not prevent a TRO.

Second, the Government incorrectly suggested that venue was improper. D.B. alleges in his complaint (verified at the Rule 65.1 conference) that a substantial part of the events or omissions giving rise to the claims before the Court occurred in this Judicial District. Compl. ¶ 6, ECF No. 1 (citing 28 U.S.C. § 1391(b)(2)). More precisely, as D.B. testified at the Rule 65.1 conference, he presently lives and works in Ohio. The Court therefore finds that venue is proper.

All told, neither of the Government's procedural arguments deter the Court from entering a TRO.

## III. CONCLUSION

Finding all TRO factors met and the Government's arguments unconvincing, the Court **GRANTS** D.B.'s motion for a TRO. ECF No. 2. The Court accordingly **ORDERS** Defendants to reinstate D.B.'s F-1 status and SEVIS authorization, retroactive to the date that it was terminated.[6] Defendants **MUST** file a notice of compliance with this Order no later than Friday, April 25, 2025, at 5:00 PM. With that notice of compliance, the Defendants **SHALL** also file an affidavit explaining why D.B.'s F-1 status was revoked.

The Court further **ENJOINS** Defendants from taking any action or imposing any legal consequences based on their termination of D.B.'s F-1 student status or SEVIS record. Nor may Defendants retaliate against D.B. in any way. Specifically, Defendants must not revoke D.B.'s F-1 visa, detain him, initiate removal proceedings against him, or deport him. These examples are illustrative, and this injunction should be construed liberally in favor of breadth.

The Court **WAIVES** the bond requirement in Federal Rule of Civil Procedure 65(c) because Defendants will not suffer damages if it is ultimately determined that they were wrongfully restrained.[7]

The TRO shall take effect at 9:00 AM. on April 23, 2025, and expire 14 days later, subject to one extension up to another 14 days.

---

[6] Reinstatement of D.B.'s F-1 status and SEVIS registration fits with the purpose of TROs to maintain the status quo. See *Oruganti*, 2025 WL 1144560, at *2 n.2.
[7] See *Student Doe v. Noem*, 2025 WL 1134977, at *8 (waiving bond); *Roe v. Noem*, 2025 WL 1114694, at *4 (same); *Ratsantiboon*, 2025 WL 1118645, at *3 (same).

The Court **VACATES** the hearing(s) it set orally at the Rule 65.1 hearing and **SETS** a status conference for Monday, April 28, 2025, at 1:00 PM in Courtroom 120. The parties **SHALL** submit a proposed protective order and proposed case management schedule by that time. Within the proposed case management schedule, the parties shall state whether a preliminary injunction hearing will be necessary (or whether the Court can consider a preliminary injunction on a paper record) and, if so, whether the Court should consolidate the preliminary injunction hearing with a trial on the merits.

The Clerk shall terminate ECF No. 2 as a pending motion.

**IT IS SO ORDERED.**

                                                *s/ Michael H. Watson*
                                         **MICHAEL H. WATSON, JUDGE**
                                         **UNITED STATES DISTRICT COURT**